**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| V. | : | CR. No. 06-22-01ML |
| | : | |
| ALBERTO SAMA-GRACIANO, a/k/a JoJo | : | |

**GOVERNMENT'S RESPONSE TO**
**DEFENDANT'S SENTENCING MEMORANDUM**

Now comes the United States of America, by and through its attorneys, Robert Clark Corrente, United States Attorney, and Stephanie S. Browne, Assistant United States Attorney, and hereby responds to the Defendant's sentencing memorandum.

Defendant has urged the Court to sentence him below the guideline range. He claims he deserves both a downward departure and a variance because he has "significant medical problems," there exists a strong family relationship, and he is deportable. None of these, either alone or in combination, warrants a sentence below the already low guideline range of 37 to 46 months.

Facts:

As the Court is aware from this case and a number of related cases which have been before it, defendant came to the notice of law enforcement during a long drug trafficking investigation which involved a number of court-authorized wire intercepts. Over the months long course of the investigation, defendant's telephone calls were intercepted and monitored. There are literally thousands of calls initiated by and/or received by defendant which relate to drug trafficking - when would he receive drugs, who he would sell to, how much he would pay for cocaine, how much he would charge his buyers, etc.. The government does not seek to attribute these amounts

to defendant as relevant conduct; however, the Court should be aware that defendant is not a one-time or first-time dealer. This was an on-going enterprise for him. In the absence of a verifiable, legitimate source of income for defendant, the Court would be correct in concluding that the majority of any financial support defendant provided to his family was the result of cocaine trafficking.

Defendant's "significant medical problems" did not impact his drug trafficking to any material extent. The only impact it seemed to have was that he always required someone else to drive him to and from his deals.

Relevant Law:

In light of United States v. Booker, 543 U.S. 220 (2005), the guidelines are no longer mandatory in terms of their application by District Courts. Booker dictates that District Courts must consult the guidelines and must take them into account when sentencing. "[T]he guidelines remain part and parcel of the sentencing algorithm." United States v. Pho, 433 F.3d 53, 61 (1st Cir. 2006). Sentencing courts are to "consult [the] Guidelines and take them into account when sentencing." Booker, 543 U.S. at 264; see also 18 U.S.C. § 3553(a)(4). Compliance with Booker necessitates that guidelines calculations be prepared by the United States Probation Officer. It also necessitates that the Court perform an analysis, in the appropriate case, as to whether a downward, or upward, departure is warranted. As was the case previous to the Booker decision, District Courts must also consider those factors set forth in 18 U.S.C. § 3553(a), including: the applicable guidelines range; the nature, seriousness and circumstances of the offense; the history and characteristics of the defendant; protection of the public; deterrence to criminal conduct; the need to promote respect for law and provide for just punishment; the needs of the defendant for

educational training, vocational training, medical care and other correctional treatment; the need to avoid unwarranted disparities among similarly situated defendants; and restitution concerns.

In terms of a guidelines analysis, pre-Booker case law still applies. Whether the guidelines are mandatory or advisory, such case law interprets and explains the guidelines. Each guideline applies to a heartland of typical cases. United States v. Carrion-Cruz, 92 F.3d 5, 6 (1st Cir. 1996). A District Court has discretion to depart from the guideline range if the Court finds that there exists an "aggravating or mitigating circumstance of a kind, to a degree, not adequately taken into consideration" by the Sentencing Commission in formulating the guidelines. 18 U.S.C. § 3553(b). However, not every mitigating or aggravating circumstance warrants a departure. United States v. Bogdan, 284 F.3d 324, 327 (1st Cir. 2002); United States v. Vasquez, 279 F.3d 77, 80 (1st Cir. 2002), and the guidelines "place essentially no limit on the number of potential factors that may warrant a departure." Burns v. United States, 501 U.S. 129, 136-137 (1991).

The guidelines list several factors which are forbidden and cannot be used as grounds upon which to base a guidelines departure. Other factors are described as "encouraged" or "discouraged." If an encouraged factor is present, the Court may base a guidelines departure decision on that factor if the applicable guideline has not already taken it into consideration. If a discouraged factor is present, or the encouraged factor has already been taken into account by the guideline, the Court may depart under the guidelines only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. If the particular factor is not mentioned in the guidelines, the Court must decide whether the factor is sufficient to take the case out of the heartland. A departure based on an unmentioned factor will be "highly infrequent." Koon v. United States, 518 U.S. 81, 96 (1996); United States v. Dethlefs, 123 F.3d 39 (1st Cir. 1997). However, post-Booker, “the fact ‘[t]hat a factor is

discouraged or forbidden under the guidelines does not automatically make it irrelevant when a court is weighing the statutory factors apart from the guidelines.'" United States v. Aitoro, 446 F.3d 246, 255 n. 9 (1st Cir. 2006) (quoting United States v. Smith, 445 F.3d 1, 4 (1st Cir. 2006)). "Nevertheless, [the Jimenez-Beltre] decision did treat the guidelines as more than just 'one factor among many,' deemed them the proper starting point for post-Booker sentencing, and said that the proponent of a variance had to support it." United States v. Navedo-Concepción, No. 05-2301, slip op. at 5 (1st Cir. June 9, 2006) (quoting United States v. Jimenez-Beltre, 440 F.3d 514, 518-19 (1st Cir. 2006)).

Argument:

Defendant's Immigration Status Does not Warrant a Downward Departure or Variance

Defendant premises his argument upon the holding in United States v. Pacheco-Soto, 386 F.Supp. 1198 (D.N.M. 2005). The district court in that case found that such a departure, in a drug trafficking case, was warranted. However, the First Circuit has not so held. In United States v. Maldonado, 242 F.3d 1, 5 (1st Cir. 2001); the Court found that a defendant who is a deportable is still within the heartland of the guidelines absent something extraordinary. Maldonado, like this case, involved a defendant convicted of drug trafficking charges who was likely to be ordered deported at the completion of his federal term of incarceration.

> Although the Commission did not proscribe the district court's approach . . . , it obviously knew that deportable aliens commit crimes, that drug sentences are lengthy and that prisons are expensive. It is thus hard to avoid treating the Commission's failure to provide a discount as equivalent to rejecting a discount *as a matter of course*.
>
> In short, a deportable alien who commits a crime is still within the "heartland" of the guidelines, absent something more. If deportablity, expense, or some combination of the two justifies a departure, it would have to be on case-specific findings that made the case unusual. Under Koon v. United States, 518 U.S. 81, 96, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), the Sentencing Commission's silence might give the district court lattitude in the

> extraordinary case; but the common facts of a long sentence and likely deportation are not by themselves extraordinary."

Id. (Emphasis in original; internal citations omitted). There is simply nothing extraordinary about defendant's situation. He is a drug trafficker who is deporatable. To sentence as defendant requests would place deportable aliens on a preferential footing concerning length of sentences. His crime involves powder cocaine, so there is no issue about "disparity" in the guideline calculation. His guideline range is already remarkably low given that his offense involve just under two kilograms of cocaine.

Defendant's Medical Condition does Not Warrant a Lesser Sentence

Although defendant lists this as a basis for a sentence below the guideline range, he hardly mentions it in his memorandum. He provides no facts or argument to justify his claim. There is simply nothing provided by defendant to indicate that his medical condition can not be dealt with adequately by the Bureau of Prisons. As defendant did not develop this argument at all, the Court should not consider it. At most, the Court may wish to recommend defendant be placed at one of the Bureau of Prison's medical treatment facilities.

Defendant's Family Relationship is Not a Basis for Departure/Variance

Defendant's argument seems to be that, despite being a drug dealer, he's really a good father and husband and should get a lesser sentence on that ground. All that defendant has shown the Court is that he provided well for his family. What he neglects to add is that the funds he so generously provided to his wife and daughters were the fruits of drug trafficking. It is easy to be generous to one's own when one cares nothing for the effects of one's actions on others.

Defendant claims that a lengthy incarceration would negatively impact on his family with whom he is close. Section 5H1.6 of the guidelines states, in part, that "[f]amily ties and

responsibilities . . . are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." Thus family ties and responsibilities are discouraged factors upon which to base a departure decision under the guidelines. To base a departure on this factor, the family ties or responsibilities must be present to an exceptional degree, distinguishing it from the ordinary case. United States v. Louis, 300 F.3d 78, 81-82 (1st Cir. 2002). As noted by the Louis Court:

> A defendant's incarceration will invariably cause hardship to his family. We cannot 'presume, as a general matter, that the Commission either overlooked or inadequately considered' such a consequence in formulating the guidelines. Id. (quoting United States v. Clase-Espinal, 115 F.3d 1054, 1057 (1st Cir. 1997)).

In Bogdan the Court said "Regrettably, the 'heartland' of cases under the Guidelines encompasses immense and heart-wrenching hardships." 284 F.3d at 330.

Sama-Graciano provides no explanation why his incarceration in prison will result in any different circumstances for his family other than the loss of his income. Such a loss is typical for any family which has a supporting family member incarcerated. There is nothing extraordinary about this. Downward departures from the guidelines based on this ground have been rejected by Courts where the circumstances were similar or worse than those put forth by defendant. See, United States v. Chestna, 962 F.2d 103 (1st Cir. 1992) (defendant's status as a single mother of four young children not an unusual family circumstance); United States v. Reyes-Rodriguez, 344 F.3d 1071 (10th Cir. 2003) (defendant's support of his wife, two children, and his poverty-stricken parents did not bring case outside the heartland); United States v. Carrasco, 271 F.3d 765 (8th Cir. 2001) (defendant, whose wife was disabled and was the primary support for three children, was not entitled to a family circumstances downward departure); United States v. Sweeting, 213 F.3d 95 (3rd Cir. 2000) (defendant's status as the sole support for five children, including one who

suffered from Tourette's Syndrome, was insufficient to take the case out of the heartland); United States v. Kapitzke, 130 F.3d 820 (8th Cir. 1997) (fact that defendant's incarceration would place financial burden on wife, who would be left to support their two children alone, not justify departure); United States v. Archuleta, 128 F.3d 1446 (10th Cir. 1997) (defendant's status as single parent for two minor children and care giver for a diabetic mother did not take case outside the heartland); United States v. Cacho, 951 F.2d 308 (11th Cir. 1992) (mother of four small children not entitled to family circumstances downward departure); United States v. Goff, 907 F.2d 1441 (4th Cir. 1990) (Nothing extraordinary where defendant was mother of three children, ages two through seven, who would have to live with defendant's ill mother in Ohio during defendant's imprisonment). In United States v. Brand, 907 F.2d 31 (4th Cir 1990), the Court reversed the District Court which had granted a downward departure based on family circumstances where the defendant's two children would have to be separated, living with a foster family and with her in-laws, during her incarceration. The Court stated:

> A sole, custodial parent is not a rarity in today's society, and imprisoning such a parent will by definition separate the parent from the children. It is apparent that in many cases the other parent may be unable or unwilling to care for the children, and that the children will have to live with relatives, friends, or even in foster homes. We, indeed have only recently affirmed a district court's refusal to depart downward based on quite similar mitigating circumstances:
>
> > "The [defendant] has shown nothing more than that which innumerable defendants could no doubt establish: namely, that the imposition of prison sentences normally disrupts spousal and parental relationships, and that current criminal behavior can often be partially explained by childhood abuse and neglect.
>
> United States v. Daly, 883 F.2d 313, 319 (4th Cir. 1989)." Id. at 33.

The fact that § 5H1.6 of the guidelines exists indicates that the Sentencing Commission considered that incarceration of a parent would result in significant hardships on other family

members, including children. Having that in mind, the Commission chose to make family circumstances a discouraged factor.

In the instant case, defendant has failed to demonstrate extraordinary family circumstances which would take him outside the heartland. It is not the Court which is responsible for defendant's inability to contribute to his family, that was something defendant forfeited by his decision to traffic in drugs.

Combination of Factors

The government has argued that none of the alleged grounds put forth by the defendant warrants a departure. Even if this Court considers the grounds in toto, departure is not warranted since the case is not "exceptional" nor is each characteristic "present to a substantial degree." USSG § 5K2.0(c)(1) and (2).

§ 3553(a) Factors Require a Sentence Within the Guideline Range

Defendant argues that a sentence in the range of 37 to 46 months is too harsh. He does not ever address directly any of the factors enunciated in 18 U.S.C. § 3553(a). His background, while not ideal, is hardly unique. He, unlike so many of those who appear before the Court, had a relatively stable upbringing. PSR ¶¶ 30, 31. He has no history of drug abuse although he does drink what may, perhaps, be too much beer on the weekends. PSR ¶ 40. He has no significant mental health issues. PSR ¶ 39.

An application of the factors listed in 18 U.S.C. § 3553(a) does not afford Sama-Graciano relief. Those factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed-(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment ···; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for ···

> the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ···; (5) any pertinent policy statement ··· issued by the Sentencing Commission ···; (6) the need to avoid unwarranted sentence disparities among defendants with similar records ···; and (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1) requires the sentencing court to consider a defendant's background and the circumstances of the instant offense. In this case, such an examination affords defendant no relief. Defendant conspired to distribute and to possess with intent to distribute one kilogram of cocaine and he attempted to possess with the intent to distribute an additional 992.82 grams of cocaine. Those amounts are worth over $40,000 on the street. As for his personal history, defendant is among a minority who come before this Court in that, although he has been convicted of a drug trafficking offense, he himself is not a drug user. Thus it is fair and reasonable for the Court to conclude that he had these drugs purely as a commercial venture - he did this for profit. The manner in which he supported his family despite no legitimate income of any significance only highlights this. This was a business, a result of greed not of need brought on by drug addiction. Defendant does not suffer from any mental health or emotional health problems. He is 39 years old and thus this offense can not be described as a youthful indiscretion.

18 U.S.C. § 3553(a)(2) sets forth a number of considerations for the sentencing court. Among those considerations are the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense; to provide adequate deterrence to criminal conduct; and to protect the public from further crimes at the hands of defendant. Given defendant's lack of any motivation for this crime other than a desire for money, it is necessary to sentence him adequately. In a case such as this one where defendant has no compelling reasons why he could not conform his conduct to the law, the factors in § 3553(a)(2) which go to deterrence, respect for the law, just punishment, and protection for the public all serve

individually and collectively as reasons why a sentence at the mid-point of the guideline range is reasonable and appropriate.

Contrary to the admonition in Jimenez-Beltre that the proponent of a variance has to provide support for a sentence below the advisory guideline range, defendant has provided no support for such a decision. He has demonstrated no personal characteristics, no facts about the crime, nor any grounds to support a conclusion that a sentence below the range as set forth in the PSR would be reasonable or would meet the requirements of 18 U.S.C. § 3553(a).

For all of the foregoing reasons, defendant's motion should be denied. He should be sentenced to 41 months, the mid-point of the advisory range. Such a sentence is reasonable when all of the factors within the statute are considered and weighed.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/Stephanie S. Browne
STEPHANIE S. BROWNE
Assistant U. S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
401-709-5000
401-709-5001 (fax)
stephanie.browne@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of October, 2006, I caused the with Government's Sentencing Memorandum to be electronically filed with the United States District Court for the District of Rhode Island, using the CM/ECF System. The following participant has received notice electronically:

Robert B. Mann
Mann & Mitchell
610 Turks Head Place
Providence, RI 02903

/s/Stephanie S. Browne

Stephanie S. Browne
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
401-709-5000
401-709-5001 (fax)
stephanie.browne@usdoj.gov